The Honorable David Evans State Representative Post Office Box 856 Searcy, Arkansas 72145-0856
Dear Representative Evans:
I am writing in response to your request for an opinion on a question regarding the collection of "dues" by a "fire protection district" and the distribution of state insurance premium tax revenue (Act 833 monies), to fire departments by the State. You have attached a letter from a Searcy, Arkansas attorney stating that the "Fairview Fire Protection District in White County, Arkansas, services 1500 people, households and businesses in the District" and that "[a]pproximately 90-100 households or businesses outside the District pay their dues to Fairview." She states that "[t]hese households or businesses are in the Albion District," but that "these property owners have chosen to seek the services of Fairview because their property is closer to the Fairview Fire Department than Albion." The attorney also states that "Act 833 of 1991, codified at A.C.A. 14-284-403 et seq. sets out an apportionment of funds from the Department of Finance and Administration to the various counties for volunteer fire departments" and that "[i]t was suggested by a person in the Arkansas Department of Emergency Management that because Fairview Fire Protection District receives `833' money, it could not accept dues from those persons residing out of the District and to do so would cause the District to lose its `833' money." You ask that I address the question posed by the local attorney, which is "whether or not, pursuant to A.C.A. 14-284-403, et seq., [Fairview] can continue to receive "833" money and accept dues from persons, businesses or households outside its District boundaries." *Page 2 
RESPONSE
I have found no statute, rule, or regulation that dictates the forfeiture of "Act 833" funds when a private non-profit fire department accepts dues from outside its service area. The Office of Fire Protection Services ("Office"), which operates under the supervision of the Director of the Arkansas Department of Emergency Management ("ADEM"), has responsibility for implementing the activities of the "Arkansas Fire Protection Services Board" ("Board") in connection with the distribution of Act 833 funds. I have not found any restrictions under the applicable statutory scheme for distribution Act 833 funds, however, or any regulation or policy of the Fire Protection Services Board or the Office that limits the receipt of Act 833 funds when a fire department accepts dues from outside its service area. In addition, the Office of Fire Protection Services is charged with the development of a comprehensive "Arkansas Fire Protection Services Resources Plan," which must be designed in part to "coordinate the efforts of all state and local government fire services agencies for the purpose of making maximum use of the services and resources for the prevention and mitigation of injury and damage caused by fire and other hazards." Although the Office has the authority to incorporate the plan or any parts thereof into regulations, or into "executive orders which have the force and effect of law," it does not appear that any limitations as to the receipt of membership dues outside the service area of a nonprofit fire department have been adopted through this process. In the absence of any such properly adopted statute, rule, or order, I cannot conclude that Act 833 funds are jeopardized when a local nonprofit fire department accepts dues from outside its boundaries or service area.
It is necessary, as an initial matter, to clarify the status of the Fairview Fire Protection District. Both your request for an opinion and the attorney's letter you enclose, refer to Fairview as a "fire protection district." The attorney's letter also refers, however, to the collection of "dues" and to "memberships" in the district. A question thus arises as to whether the Fairview fire entity to which you refer is actually a "fire protection district" or simply a private nonprofit "subscription" fire department.
One of my predecessors addressed the myriad forms a fire protection entity or a "volunteer fire department" may take in Op. Att'y Gen.96-114. He stated: *Page 3 
 Such departments may be incorporated as purely private nonprofit corporations collecting dues or membership fees; as fire protection districts under A.C.A. § 14-284-101 et seq. or 14-284-201 et seq., or suburban fire improvement districts under A.C.A. § 14-92-201 et seq., all of which assess local benefits to be collected with ad valorem taxes; as a county "volunteer fire department" under A.C.A. § 14-20-108(c) or as a county created subordinate service district under A.C.A. §§ 14-14-708 and-709 (1987).
Id. at 4 (fn. 2).
With regard to "fire protection districts," my predecessor stated in another opinion that:
 The term "fire protection district," in a legal sense, ordinarily refers to a type of improvement district created under A.C.A. § 14-284-101 et seq., or 14-284-201 et seq. These two subchapters are entitled "Fire Protection Districts" and "Fire Protection Districts Outside of Cities and Towns," respectively. The boundaries of such entities are fixed in the petition to form the district. See A.C.A. §§ 14-284-103(a) and 14-284-206. These districts collect amounts which are either assessed as benefits against property within the district, or levied as flat fees on property within the district, both of which are collected with property taxes. See A.C.A. § 14-284-108; § 14-284-212; § 14-284-212(g); § 14-284-112; §§ 14-284-215 — .216 .
Op. Att'y Gen. 98-148 at 3.
With regard to private nonprofit "subscription" fire departments, my predecessor stated:
 The nonprofit entities to which you refer are variously referred to as "nonprofit fire protection corporations" (see, e.g., Acts 1991, No. 801 § 5), or simply as "volunteer fire departments" or "rural fire departments." They are simply created under the general state law authorizing the creation of all types of nonprofit corporations. *Page 4 
Id. at 3.
It is my understanding after further inquiry that the Fairview District as well as the "Albion District" ("Albion Fire Association, Inc."), are private nonprofit corporations formed under the Domestic Nonprofit Corporation Act of 1963 (Act 176 of 1963). Seewww.sos.arkansas.gov/corps. Such nonprofit fire departments, unlike fire protection improvement districts, do not always have legally-established boundaries.
The Forestry Commission's website describes the boundaries of certain fire entities as follows:
 Most fire departments establish boundaries at least five road miles from their station in order to be able to offer reduced insurance ratings to those who live inside that area. When other departments' boundaries are already established, they should be respected and overlapping of boundaries avoided. The County Judge or County Fire Services Coordinator usually has maps of established fire boundaries. 911 systems must know which department to notify when a fire occurs. Mutual aid between departments is encouraged. County Quorum Courts are required to establish service areas of fire protection districts, and furnish a map of the area. Boundary disputes between departments are to be resolved by the Arkansas Forestry Commission.
www.forestry.state.ar.us/ruralfire.
As indicated above, there is no general statute dictating the boundaries of all nonprofit "subscription" fire departments or investing any official with a general duty to set such boundaries.[1]
Notwithstanding this absence of general law, the service areas of individual nonprofit fire departments may be established by the *Page 5 
county quorum court under A.C.A. § 14-20-108 (b), if the fire department is one that has availed itself of the county dues collection process described in that statute. See A.C.A. § 14-20-108 (b) (Supp. 2007) ("The [quorum] court by majority vote may designate the geographical area that a volunteer fire department may serve"). In addition, individual private nonprofit fire department boundaries may be described in the by-laws or articles of incorporation of individual corporations. Finally, in the case of overlapping boundaries between two departments, the Arkansas Forestry Commission has authority to settle the matter. In this regard, section 14-284-125 of the Arkansas Code provides:
 The State Forestry Commission shall have authority to adjust the boundaries of fire protection districts having overlapping boundaries. The commission shall adjust the boundaries of overlapping fire districts upon the request of either district. The commission shall adjust the boundaries so that each district receives approximately fifty percent (50%) of the area that is within the boundaries of both districts.[2]
I am not in receipt of any information as to how or whether the Fairview District's boundaries and/or service area have been set. In any event, with this background regarding boundaries or service areas established, your question is whether the Fairview Fire Protection District, by accepting membership dues from persons and businesses outside its "district" will jeopardize its receipt of "Act 833" funds. I assume this question has reference to Act 833 of 1991. That Act is entitled "AN ACT to Provide for Additional Funding of Arkansas Fire Departments Through Additional Insurance Premium Taxes Assessed Against Insurers Writing Fire Insurance and Similar Coverages in Order to Reduce Homeowner Insurance Rates in Arkansas; and for Other Purposes." As stated in Op. Att'y Gen. 2000-068:
 Act 833 imposes a 0.5% tax on net direct written premiums for certain types of insurance coverage. See A.C.A. § 26-57-614(b). The tax is collected by the Insurance Commissioner and deposited into the Fire Protection Premium Tax Fund for disbursement to the counties by the Department of Finance and Administration according to certain percentages. Id. at subsection (c) and A.C.A. *Page 6 
§ 14-284-403(a)(1). The premium tax moneys are then apportioned by the county quorum courts to the fire protection districts and municipalities in accordance with A.C.A. § 14-284-403(a)(2).
Id. at 2.
You state that "[i]t was suggested by a person in the Arkansas Department of Emergency Management that because Fairview Fire Protection District receives `833' money, it could not accept dues from those persons residing out of the District and to do so would cause the District to lose its `833' money" and you indicate that this conclusion was asserted because "[t]he `833' money is apportioned only for the number of people, households or businesses in the Fairview District, not on any memberships outside the District." You thus inquire as to "whether . . . [Fairview] can continue to receive `833' money and accept dues from persons, businesses or households outside its District boundaries."
As an initial matter, the statutory subchapter governing distribution of Act 833 funds does not contain any such prohibition. Section 14-284-403
(Supp. 2007) of the Arkansas Code sets out the percentages of premium tax moneys to be allocated to each county. Id at (a)(1). The funds are to be "apportioned by each quorum court to the districts and municipalities within the county. . . ." Id. at (a)(2)(A). With regard to any applicable restrictions, subsection (a)(2)(B) states that "[t]he funds shall be distributed to municipalities and those certified departments in districts which are in compliance with this subchapter [A.C.A. §§ 14-284-401 — . 411], § 20-22-801 et seq., and § 6-21-106."
It will be easier to discuss these three separate statutory requirements for receiving Act 833 funds out of order. The last statute mentioned above (A.C.A. § 6-21-106 (Supp. 2007), requires fire departments to perform certain fire inspections of school premises. The first of the statutory schemes mentioned above (A.C.A. §§ 14-284-401 — .411), contains a number of continuing requirements for nonprofit fire departments to receive Act 833 funds, including: 1) time limits on the expenditure of the funds (A.C.A. § 14-284-404(a)); 2) restrictions as to the proper expenditure of the funds (A.C.A. § 14-284-405(c)(5); the mandatory designation of a county fire service coordinator to see that standard guidelines promulgated by the Arkansas Fire Protection Services Board under A.C.A. § 20-22-801 et seq. are followed (A.C.A. § 14-284-405(a)); 3) the filing of certain reports (A.C.A. § 14-284-405(b)); *Page 7 
and fire department certification (A.C.A. § 14-284-410).[3] Neither A.C.A. § 6-21-106, regarding school inspections, nor A.C.A. §§14-284-401-411, however, expressly address or prohibit the receipt of dues from outside a fire department's service area in order to receive Act 833 funds.
Subchapter four of Title 14, Chapter 284 also requires fire departments to be in compliance with A.C.A. §§ 20-22-801 et seq., the third statutory scheme mentioned above. That subchapter creates and empowers the "Arkansas Fire Protection Services Board" and the "Office of Fire Protection Services," the latter of which is under the supervision and direction of the Director of the Arkansas Department of Emergency Management ("ADEM"). See A.C.A. § 20-22-805(a). The Director of the Office of Fire Protection Services has "the responsibility to carry out the administrative functions and directives of the Arkansas Fire Protection Services Board." A.C.A. § 20-22-805 (b). That board has a number of powers and duties, including the authority to promulgate minimum standards for the certification and classification of fire departments. A.C.A. § 20-22-804 (a)(1).
In addition, the Office of Fire Protection Services is responsible for "managing those activities prescribed for the board under A.C.A. §14-284-401 et seq." See A.C.A. § 20-22-1004 (Repl. 2005). That is the subchapter governing the distribution of Act 833 funds. In this regard, the Board, and thus the Office, is charged with approving requests for Act 833 funds. See A.C.A. § 14-284-405(b). The Office has apparently issued in this regard the "2008 Act 833 Program Guideline Information," available at www.adem.arkansas.gov to govern application for and use of such funds. This publication does not contain any requirement or prohibition as to the solicitation or acceptance of membership dues outside the service area of a private nonprofit fire department.
Finally, the Office of Fire Protection Services is charged with the development of a comprehensive "Arkansas Fire Protection Services Resources Plan," which must be designed in part to "coordinate the efforts of all state and local government fire *Page 8 
services agencies for the purpose of making maximum use of the services and resources for the prevention and mitigation of injury and damage caused by fire and other hazards." A.C.A. § 20-22-1006(a)(5) (Repl. 2005). Although the Office has the authority to incorporate the plan or any parts thereof into regulations, or into "executive orders which have the force and effect of law" (A.C.A. § 20-22-1006(c)), it does not appear that any limitations as to the receipt of membership dues outside the service area of a nonprofit fire department have been adopted through this process.
I thus cannot conclude that any current statute, regulation, executive order or policy prohibits or restricts the receipt of Act 833 funds if a nonprofit fire department accepts membership dues from outside its service area.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely, DUSTIN McDANIEL, Attorney General
[1] County quorum courts formerly had authority to establish the service area of nonprofit fire departments. See former A.C.A. §14-284-207. As stated in Op. Att'y Gen. 98-177, however, Act 801 of 1991
removed this authority as to fire departments organized as nonprofit corporations. That Act was entitled "AN ACT to Amend Arkansas Code14-284-207 to Eliminate the Authority of the Quorum Court to Establish the Service Area of Nonprofit Fire Protection Corporations; and for Other Purposes." Section 14-284-207 thus currently authorizes quorum courts to set the service area of "fire protection districts."
[2] Although this statute uses the words "fire protection districts," it has been interpreted as including private nonprofit fire departments.See Op. Att'y Gen. 98-148.
[3] The applicable subchapter contains contradictory subsections on whether certification is required in order to receive Act 833 funds.Compare A.C.A. § 14-284-403 (a)(2)(C), adopted in 1991 ("Fire departments which are not certified by the Office of Fire Protection Services pursuant to § 20-22-801 et seq. shall also be eligible to receive moneys disbursed under this section so long as all moneys received are spent directly on equipment, training, capital improvements, or other expenditures necessary for upgrading the service provided by the department") with A.C.A. § 14-284-410, adopted in 1995 ("No fire department shall receive funds under this subchapter after January 1, 1998, unless the fire department is certified by the Arkansas Fire Protection Services Board"). *Page 1